FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2018 JUN 18 AM 10: 21

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

Monat Global Corp, )
)
Plaintiff/Movant, )   Case No.: 3:18-mc-24-J-34MCR
)
v. )
)
Toni Miller )
)
Defendant )
_____/ )

**MONAT GLOBAL CORP'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY SUBPOENA RESPONDENT VICKI NITTINGER**

Pursuant to Federal Rule of Civil Procedure 45, Monat Global Corp ("Monat") moves to compel non-party subpoena respondent Vickie Nittinger ("Nittinger") to produce documents pursuant to Monat's subpoena dated March 1, 2018, issued from the United States District Court for the District of Nevada in *Monat Global Corp. v. Toni Miller*, Case No. 2:18-cv-00324-APG-GWF. In support, Monat states as follows:

**Introduction**

1. Monat designs, manufactures, and distributes hair care and personal products. In February 2018, Monat filed suit in the District of Nevada against Toni Miller ("Miller") arising from defamatory statements Miller made about Monat's hair care products on Facebook to thousands of people, causing damage to Monat's brand and reputation. On March 6, 2018, Monat served a third-party subpoena on Nittinger (the "Subpoena") seeking documents within her control and relevant to Monat's lawsuit against Miller. To ease the burden of production, Monat agreed to extend Nittinger's time to respond to the Subpoena, and identified

an e-discovery vendor to collect all responsive documents, even offering to pay for the vendor's services in full. Nittinger refused to use an e-discovery vendor despite Monat's offer to pay for the service, and has failed to fully and adequately respond to the Subpoena. Nittinger has no valid basis to avoid complying with the Subpoena, and has not properly objected to doing so. Rather, she repeatedly stated that she would comply. This Court should, therefore, grant Monat's motion.

### Jurisdiction

2. On February 21, 2018, Monat filed suit against Miller in the United States District Court for the District of Nevada. *See* Complaint in *Monat Global Corp. v. Toni Miller*, Case No. 2:18-cv-00324-APG-GWF (the "Underlying Action"), attached as **Exhibit 1**.

3. Federal Rule of Civil Procedure 45 permits parties to subpoena nonparties for documents and other relevant information. Fed. R. Civ. P. 45(a)(1)(A)(iii). Where the non-party fails to comply, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

4. On March 6, 2018, Monat personally served the Subpoena on Nittinger at 3801 Crown Point Road, Unit 1144, Jacksonville, Florida 32257, which was issued from the court in the Underlying Action. *See* Monat's Subpoena and Certificate of Service, attached as **Exhibit 2**.

5. Nittinger is an individual who works as a hair stylist and resides in Jacksonville, Florida.

6. Because Nittinger resides, works, and was served in this District, this Court has jurisdiction to hear this motion and enforce Monat's Subpoena.

## Background

I. **The Underlying Action: *Monat v. Miller***

7. In approximately January 2018, Miller began publicly representing on Facebook that Monat's hair care products cause miscarriages, infertility, hormonal imbalance, problems with breast feeding, harm to unborn babies, scalp sores, hair loss, and balding. **Ex. 1**, ¶ 36. Miller had no scientific or factual basis for her claims. *Id.* ¶ 40. Rather, Monat believes Miller made these false claims because, as a hair stylist, she sells competing hair care products, and was attempting to protect her salon-brand product sales. *Id.* ¶¶ 9-12. Miller has stated that her claims are based on information she obtained from a Facebook group named "Monat - My Modern Nightmare" (the "Group"), of which she is a member. *Id.*, at Ex. H. Based on Miller's false representations, Monat filed suit against Miller for violation of the Nevada Deceptive Trade Practices Act, Commercial Disparagement, Defamation, and Intentional Interference with Prospective Economic Advantage. *Id.* (Counts I-IV).

II. **Monat's Emergency Motion for Discovery on Nittinger**

8. In the beginning of 2018, Monat received substantial evidence of false and disparaging statements regarding its products and business originating from the Group, of which Miller was a member. *See* Plaintiff's Renewed Emergency *Ex Parte* Motion for Expedited Third-Party Discovery ("*Ex Parte* Motion"), attached as **Exhibit 3**, at Ex. B ("Hoolihan Decl."), ¶ 4. The Group was comprised of thousands of individuals, a number of whom were stylists or sold competing products to Monat's. Hoolihan Decl., ¶ 4. Furthermore, many of the statements emanating from the Group were highly similar to Miller's statements, and may have been proximately caused, or originated with, statements by Miller. *Id.*

9. During the relevant time period, Nittinger was the Administrator of the Group. *Id.* ¶ 4.

10. Monat also has reason to believe Miller and Nittinger share a second connection, through a company called Malibu Wellness, Inc. ("Malibu Wellness"), a competitor to Monat. In several Facebook posts, Miller advertised the purported benefit of Malibu Wellness products, stating that they can repair the supposed damage caused by Monat products, and offered "Malibu Treatments" for $45 to Monat users. *Id.* Monat has received information from a third-party source that Nittinger may also be working with Malibu Wellness, to operate the Group and damage Monat's business. *Id.* ¶ 5. Additionally, as of June 11, 2018, Nittinger's counsel is also representing Miller in the Underlying Action. *See* Civil Docket for *Monat Global Corp v. Miller*, D. N.V. Case No. 2:18-cv-00324-APG-GWF (ECF Nos. 34 and 35 (counsel's motion for *pro hac vice*, and the court's order granting counsel's motion, respectively)). Previously, Miller had appeared *pro se*.

11. Based on these connections between Miller and Nittinger, Monat believed that Nittinger had access to, and control over, information relevant to Monat's claims in the Underlying Action. Shortly after filing the Underlying Action, Monat learned that Nittinger was planning to, or had already begun, deleting evidence contained in the Group out of fear that Monat would seek discovery of such evidence. *Id.* ¶ 7. As a result, Monat brought its motion on an emergency basis. Monat sought the Motion *ex parte* because, given that Miller and Nittinger may have been collaborating, Monat was concerned that providing notice of the Subpoena to Miller would cause Nittinger to potentially hasten the destruction of documents. *Id.* ¶ 9; *see* **Ex. 3**.

12. On March 2, 2018, the Nevada court granted Monat's *Ex Parte* Motion. *See* Order Granting Emergency Ex Parte Motion for Expedited Third-Party Discovery, attached as **Exhibit 4**. After reviewing the Subpoena and Monat's *Ex Parte* Motion, the court found "good cause" existed to permit the requested discovery. *Id.* at 2. The court recognized that Monat's requests were "narrow in scope and limited to obtaining evidence that is relevant to the causes of action in this case." *Id.* The court also found that Monat "would be severely prejudiced if it were not allowed to serve the requested subpoena because of the possibility that Nittinger will destroy pertinent evidence." *Id.*

### III. The Nittinger Subpeona, Counsel's Correspondence, and Nittinger's Inadequate Response

13. The Subpoena contains three requests, seeking relevant documents:

a. All posts, comments, messages, or other statements created or otherwise made in the Group.

b. All posts, comments, messages, or other statements created or otherwise made by [Nittinger] regarding Monat or its products.

c. All communications, including text messages, private messages, or other electronic correspondence, between [Nittinger] and Miller regarding Monat, Monat's products, Monat's market partners, the Group, and Malibu Wellness.

Ex. 2.

14. Monat served the Subpoena on March 6, 2018, requiring Nittinger to respond by March 13, 2018. *Id.* On March 13, 2018, Nittinger's counsel assured Monat's counsel that "there is NO danger of any of the electronic information being destroyed or lost . . ." *See* Correspondence of Counsel Relating to Subpoena, attached as **Exhibit 5**, at Correspondence_08 (capitalization in original). Following counsel's assurances, Monat agreed to extend Nittinger's time to respond until March 30, 2018. *Id.* at 7. Nittinger's counsel confirmed that she "will comply with the Subpoena." *Id.* Nittinger has never filed any objections to the Subpoena.

15. After this preliminary correspondence, counsel for Monat and counsel for Nittinger engaged in several additional written and oral communications about the Subpoena. During a telephone conversation, Nittinger's counsel expressed concerns about Nittinger's ability to collect all relevant and responsive data on the Group on Facebook. Nittinger's counsel orally represented that there were potentially hundreds of thousands of responsive posts in the Group. In an effort to reduce the burden on Nittinger, Monat identified an e-discovery vendor, KLDiscovery, that can download and produce all relevant Facebook data. *Id.* at 5. Monat offered to pay all costs associated with KLDiscovery's services. *Id.* Given the potential size of the production, and inherent difficulties associated with accurately gathering Facebook data, Monat insisted—on multiple occasions—that Nittinger use KLDiscovery, at Monat's expense, to gather and produce the Facebook data. *Id.* at 1-5.

16. But Nittinger refused. On April 3, 2018, Nittinger's counsel informed Monat that "Ms. Nittinger has decided that she can comply with the subpoena without the necessity of using a vendor." *Id.* at 5. On May 2, 2018, over a month after the agreed-upon response date, Nittinger produced a 126-page .pdf document labeled "Screen Shots."[1] *See* Sample Documents from Nittinger's production, numbered Nittinger_000001-35, attached as **Exhibit 6.**

17. As an initial matter, taking screen shots is not an appropriate method of collecting and producing Facebook data because that is not how such data is ordinarily maintained, and the resulting documentation is unlikely to be "reasonably usable." *See* Fed. R. Civ. P. 34(b)(2)(E)(ii) (requiring that parties produce documents in the form in which they are ordinarily maintained, or in a "reasonably usable" form). Similarly, the process of taking

---

[1] A "screen shot" is a term used to describe the result of capturing an image of what is being displayed on a phone or computer screen.

screenshots to collect documents is unlikely to capture all relevant data. *See* Fed. R. Civ. P. 26(b)(1) (permitting parties to obtain "relevant" documents in discovery).

18. Even a cursory review of Nittinger's "screen shot" production indicates that it falls far short of capturing all the relevant data sought by the Subpoena. *See* **Ex. 6**. First, Nittinger repeatedly failed to capture data that must be accessed via Facebook's "expandable" links. For example, on the very first page of Nittinger's production there is a screen shot of a Facebook post that includes a "continue reading" link, which indicates there is additional information in that particular post, but such information has not been accessed and produced. *Id.* at 1. Indeed, there are numerous, un-accessed "continue reading" links throughout Nittinger's production, indicating significant information has been omitted. *Id.* at 1, 4, 7, 9, 15, 18, 21, 22, 25, 26, 34. Similarly, Nittinger consistently failed to access "comments" made in response to the various Facebook posts that were produced, resulting in the omission of thousands of such "comments." *Id.* at 3, 5, 7-12, 14-16, 18, 20-22, 24, 26, 27, 28, 32, 33. Nittinger also produced numerous posts that are cut-off or incomplete. *Id.* at 1, 3, 4, 6, 9, 11, 15, 16, 18, 20, 21-23, 27, 28, 32, 33. Still other posts contain photographs that Monat cannot view because Nittinger did not expand those posts, or otherwise did not access them properly. *Id.* at 1, 4, 5, 10, 11, 13, 23, 26, 28, 29, 31, 34, 35. As a result, there seems to be at least one of the above failures to produce relevant information on nearly every single page of Nittinger's production.

19. These deficiencies demonstrate why Monat sought to have the production collected and downloaded by a vendor with experience in Facebook data collection. It is difficult for someone without technical expertise to properly access all of the relevant data available on Facebook. But a vendor would be able to do so, and would eliminate these deficiencies, while reducing the burden placed on Nittinger.

20.     Putting aside the inadequacies with the data Nittinger did produce, her production makes clear that she failed to include data from multiple areas of the Facebook Group altogether. Indeed, although all of Nittinger's production comes from just one section of the Group, titled "DISCUSSION", (*id.* at 1-35), it is clear that the Group includes multiple other sections, including an "ABOUT" section, a "PHOTOS" section, and a "FILES" section, to name a few. *Id.* All of these sections contain discoverable information, that was called for by Monat's Subpoena, yet none have been produced. *Id.* Finally, separate and apart from the Group data, Nittinger has failed to produce any of her communications with third-parties or Defendant Miller regarding Monat, its Market Partners (*i.e.*, independent distributors), or its products, all of which Monat requested. *Id.*

21.     Monat's counsel contacted Nittinger's counsel to explain the deficiencies with Nittinger's production on multiple occasions, demanding a full and complete production, and again offering to pay for the services of a third-party e-discovery vendor. *See* **Ex. 5**, at Correspondence_01-4. Nonetheless, over 2 months after the parties agreed Nittinger's document production was due, Nittinger still has not fully complied with the Subpoena, and has offered no valid reason for failing to do so.

## Argument

### I.     Applicable Standard

22.     Federal Rule of Civil Procedure 45 "governs discovery of non-parties by subpoena." *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, No. 05-cv-119-T-23TBM, 2006 WL 905517, at *2 (M.D. Fla. April 7, 2006). Rule 45 provides that "[a]t any time, on notice to the commanded person, the servicing party may move the court for the district

where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

23. "The scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." *Kona Spring Water Distrib.*, 2006 WL 905517, at *2 (citing Fed. R. Civ. P. 45 advisory committee's note to the 1970 Amendments). Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b).

## II. This Court should Compel Nittinger to Produce the Requested Documents and Information because they are Relevant and Responsive to Monat's Subpoena

24. In civil discovery, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *S.E.C. v. Rex Venture Grp. LLC*, 2013 WL 1278088, at *3 (M.D. Fla. Mar. 28, 2013) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "A discovery request 'should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.'" *Id.*

25. Monat sought three categories of documents: (i) all posts, comments, messages, or other statements created or otherwise made in the Group; (ii) all posts, comments, messages or other statements created or otherwise made by Nittinger regarding Monat or its products; and (iii) all communications between Nittinger and Miller regarding Monat, Monat's products, Monat's market partners, the Group, and Malibu Wellness.

26. As the court in Nevada has already recognized, Monat's document requests are "narrow in scope and limited to obtaining evidence that is relevant" to Monat's claims against Miller. **Ex. 4**, at 2. The requests relate to Miller's basis, if any, for making the

defamatory statements about Monat as well as her intent when making them. They are also relevant to Monat's damages claims. Indeed, for the past six months, Monat has become aware that individuals in the Group have routinely circulated false and disparaging information about Monat that is similar to Miller's false statements. Hoolihan Decl., ¶ 4. Miller is a member of the Group and is therefore able to review and contribute to content posted within the Group. *Id.* Nittinger is the leader and Administrator of the Group, and likewise able to review and contribute to its content. *Id.* Thus, the communications and posts found in the Group are squarely at issue in the Underlying Action. Moreover, Monat has reason to believe Miller and Nittinger may be working together, and/or with Malibu Wellness, a Monat competitor, in their efforts to disparage Monat and operate the Group. *Id.* at 4-5. Accordingly, the evidence Monat seeks is probative of the extent to which Miller has damaged Monat through her false representations, Miller's basis (if any) for making those representations, and her intent in making them.

27. Likewise, given that Monat has offered, and continues to be willing, to pay for the full cost of collecting the requested information, there is no basis on which to contend that the discovery Monat seeks is disproportionate to the needs of this case, nor unduly burdensome for Nittinger.

### III. Nittinger has Failed to Properly Object to the Subpoena, and has Therefore Waived any Right to do so

28. Federal Rule of Civil Procedure 45 provides that a person subject to a subpoena can serve on the requesting party a "written objection," which "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "[A]s a general rule, when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived." *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 668 (N.D. Fla. 2010) (finding that a non-party subpoena

respondent waived its objection to a subpoena by failing to submit a timely objection) (citing *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989)). "This is so even though a party had an objection to make." *Id.*

29. Monat served Nittinger with the Subpoena on March 6, 2018, and specified a response date of March 13, 2018, which was extended to March 30, 2018. The latest date Nittinger could have filed objections—14 days following service—was March 20, 2018. *See* Fed. R. Civ. P. 45(d)(2)(b). It is now June 15, 2018, and Nittinger has failed to file or serve any written objections to the Subpoena. Rather, Nittinger assured Monat that she would "comply with the subpoena." **Ex. 4**, at Correspondence_04, 7. But she has failed to do so. Given that Miller has waived any objection she has to the Subpoena, this Court should order her to fully comply by allowing KLDiscovery access to the Group to collect and download the responsive data and by ordering her to produce the other responsive documents not contained in the Group.

## Conclusion

For the foregoing reasons, Monat Global Corp respectfully requests this Court grant its Motion to Compel, and enter an Order requiring that Respondent Vicki Nittinger fully comply with Monat's subpoena dated March 1, 2018 issued from the United States District Court for the District of Nevada in *Monat Global Corp. v. Toni Miller*, Case No. 2:18-cv-00324-APG-GWF.

## RULE 3.01(g) CERTIFICATION

Counsel for Monat Global Corp has conferred with Counsel for Vicki Nittinger regarding the issues raised in this motion and, despite those efforts, has been unable to resolve the issues.

## RULE 3.01(j) REQUEST FOR HEARING

Monat Global Corp respectfully requests a 30 minute hearing to assist the Court in understanding the procedural background of the Nevada matter, the justification for the requested discovery, and to address any questions the Court may have

Date: June 15, 2018

                                Respectfully,

By:   /s/ Andrea Cox
        Jeffrey B. Shapiro, FBN 484113
        Andrea Cox, FBN 173495
        SAUL EWING ARNSTEIN & LEHR LLP
        200 S. Biscayne Blvd., Suite 3600
        Miami, FL 33131
        (305) 428-4500
        jeffrey.shapiro@saul.com
        andie.cox@saul.com
        MIA-ctdocs@arnstein.com

***Counsel for Monat Global Corp***

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing and all exhibits were served on the following counsel of record by electronic and U.S. mail on this 15th day of June, 2018 on:

Janet R. Varnell, Esq.
**Varnell & Warwick P.A.**
P.O. Box 1870
Lady Lake, Florida 32158
Telephone: (352) 753-8600
Primary email: jvarnell@varnellandwarwick.com


*Attorney for Defendant Toni Miller and Respondent Vicki Nittinger*


By:   /s/ Andrea Cox
      Jeffrey B. Shapiro, FBN 484113
      Andrea Cox, FBN 173495
      SAUL EWING ARNSTEIN & LEHR LLP
      200 S. Biscayne Blvd., Suite 3600
      Miami, FL 33131
      (305) 428-4500
      jeffrey.shapiro@saul.com
      andie.cox@saul.com
      MIA-ctdocs@arnstein.com

      *Counsel for Monat Global Corp*